IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRY KENNETH LOKEY, JR. ) | |
| ) | |
| v. ) | No. 3:17-1090 |
| ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION[1] ) | |

To: The Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

Currently pending is Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 18.[2] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled" and therefore not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") at 8-10).[3] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See* DE 2.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq*. Pursuant to Fed. R. Civ. P. 17(d), a public officer who is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill is no longer the Acting Commissioner, the Clerk is DIRECTED to identify Defendant by the official title rather than by name.

[2] Plaintiff filed his brief without filing an actual motion (*see* DE 16), though he rectified this several months later. *See* DE 18. Because Plaintiff's brief was filed within the relevant deadline (*see* DE 14-16) and Defendant has made no objection, the undersigned construes the motion as timely filed.

[3] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

Upon review of the administrative record and consideration of the parties' filings, I recommend that Plaintiff's motion for judgment on the administrative record (DE 18) be **GRANTED**, the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this Report.

I.  FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI on September 8, 2015 due to back problems and bipolar disorder, with an alleged onset date of August 1, 2014. (Tr. 44, 60-61). His application was denied initially and upon reconsideration. (Tr. 60-61, 94-95). Pursuant to his request for an administrative hearing, Plaintiff appeared with counsel and testified at a hearing before ALJ John E. Case on November 2, 2016. (Tr. 26). On January 25, 2017, the ALJ denied the claim. (Tr. 8-10). On June 8, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision. (Tr. 1-3). Therefore, the ALJ's decision stands as the final determination of the Commissioner.

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since August 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar spondylosis, peripheral neuropathy, chronic pain syndrome, and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could stand and/or walk no more

2

than 4 hours in total. He could occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant could work in non-hazardous work environments. Additionally, the claimant would be limited to the performance of simple, non-complex tasks. He should not work with the public and could adjust to infrequent changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 18, 1987 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

On appeal, Plaintiff submits three assertions of error:(1) that the ALJ failed to sufficiently justify his decision to discount a treating physician's opinion; (2) that the ALJ failed to properly evaluate Plaintiff's credibility; and (3) that the residual functional capacity determination is not supported by substantial evidence. DE 16 at 9, 13, 18. Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 21.

## II. ANALYSIS

### A. Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step

4

four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; and at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. §§ 404.1520(a), 416.920(a). "Past relevant work" is defined as work that claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (citing 20 C.F.R. § 404.1560(b)(1)). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial

5

evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The Commissioner's Decision

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform light work with express limitations to account for his severe impairments, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite such limitations. (Tr. 13-20).

### C. Assertions of Error

#### 1. The treating physician's opinion.

In evaluating the medical evidence of record, the ALJ is required to accord controlling weight to the opinion of a treating physician if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[4] If the opinion is not given controlling the weight, the ALJ must still consider the amount of weight to accord it. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 751 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010)). The ALJ's explanation for such

---

[4] The treating physician rule applies only to Social Security claims filed before March 27, 2017, such as the current one. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

weight allocation must include reasons that are "supported by the evidence in the case record, and ... sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion[.]" *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013). This requirement is known as the "treating physician rule."

One of Plaintiff's treating physicians, Dr. Victor Isaac, completed a medical source statement ("MSS") on June 1, 2016 in which he opined that Plaintiff suffers from numerous functional limitations caused by peripheral neuropathy and lumbar radiculopathy, including the inability to sit or stand for more than 30 minutes at a time, sit for more than four hours total during an eight-hour workday, or carry 10 pounds frequently. (Tr. 735-38). Dr. Isaac also found that Plaintiff would be "off task" for approximately 15% of each workday, would likely be absent from work three days per month, and would require an assistive device to ambulate. (Tr. 737-38). In according "little weight" to this opinion, the ALJ stated only that Dr. Isaac's opinion was "inconsistent with the record as a whole, including his own exam findings." (Tr. 17). Plaintiff argues that this cursory explanation violates the treating physician rule.[5]

As an initial matter, the Court notes that two separate opinions from treating physicians are included in the administrative record: one from Dr. Isaac and one from Dr. Douglas Mathews, a neurosurgeon who performed one of Plaintiff's multiple back surgeries. (*See* Tr. 811-816). In contrast to Dr. Isaac's opinion, Dr. Mathews found that Plaintiff could lift up to 20 pounds frequently, sit for the entirety of an eight-hour workday, and sit and stand for four hours without interruption. (Tr. 811-12). Dr. Mathews additionally opined that Plaintiff does not

---

[5] The treating physician rule is contained in both 20 C.F.R. § 404.1527, which applies to claims for DIB, and 20 C.F.R. § 416.927, which applies to claims for SSI. For ease of reference, the undersigned refers exclusively to 20 C.F.R. § 404.1527.

require the use of cane to ambulate. (Tr. 812). Dr. Mathews' conclusions were accorded "significant weight" by the ALJ. (Tr. 15).

After close inspection of these opinions and the relevant evidence of record, the Court concludes that the ALJ's decision to accord little weight to Dr. Isaac's opinion violates the treating physician rule and therefore lacks the support of substantial evidence. The ALJ rejected the opinion based solely on its purported inconsistency with Dr. Isaac's "own exam findings," yet the only findings from Dr. Isaac that are cited in the administrative opinion include spinal and paraspinal tenderness to palpation, decreased range of motion, and a positive straight leg raise examination (Tr. 16), all of which tend to support the limitations included in Dr. Isaac's opinion.[6] In fact, the overwhelming majority of Dr. Isaac's treatment notes document similarly supportive findings, including radiculopathy, sacroiliac tenderness, an antalgic gait, decreased sensation in the left lower extremity, a positive left-sided Patrick's test,[7] decreased flexion, and decreased motor system strength. (*See* Tr. 679, 751, 759, 763, 766, 770, 773, 779, 784, 798). The ALJ's failure to acknowledge such findings, particularly in light of Dr. Isaac's inclusion of such symptoms as support for his opinion (Tr. 735), represents a dereliction of duty that warrants reversal of the administrative decision. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011) ("[I]naccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a basis for remand.").

---

[6] The Court notes that the ALJ's additional statement that Dr. Isaac's conclusions were "inconsistent with the record as a whole" is wholly inadequate to satisfy the good reasons requirement of the treating physician rule. *See Weeks v. Comm'r of Soc. Sec.*, No. 1:16-cv-121, 2016 WL 6067957, at *4 (W.D. Mich. Oct. 17, 2016) (noting that such terminology represents "precisely the type of vague language" that the Sixth Circuit has held to be "insufficient to permit meaningful review") (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013)).

[7] Patrick's test is used to identify arthritis of the hip. *See* Elsevier Saunders *Dorland's Illustrated Medical Dictionary* 1896 (32nd ed. 2012).

Notably, there are circumstances in which an ALJ's failure to articulate good reasons for the weight given to a treating physician's opinion may constitute harmless error: (1) if the treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; or (3) if the ALJ has complied with the goal of 20 C.F.R. § 404.1527(c) by indirectly attacking the supportability of the physician's opinion. *Friend*, 375 F. App'x at 551 (internal citation omitted). Only the latter of these could arguably be applied to the instant case, although Defendant does not provide a harmless error argument in its brief. Regardless, the ALJ's scant analysis of the medical evidence pertaining to Plaintiff's physical symptoms fails to indirectly repudiate the findings and conclusions contained in Dr. Isaac's MSS. (*See* Tr. 16). To the contrary, the ALJ recognized that imaging studies demonstrated effacement and displacement of the S1 nerve root, cervical scoliosis, multilevel disc bulging, and a thecal sac fluid leak that was "concerning for a meningocele or [cerebrospinal fluid leak],"[8] and acknowledged that Plaintiff's back pain continued despite multiple lumbar laminectomies and epidural steroid injections. (Tr. 16, 284-85).[9] This is significant given that the ALJ's stated reasons for discounting Plaintiff's allegations of disabling physical pain are suspect at best, as discussed *infra*. The Court therefore finds that the ALJ has failed to comply with the goal of the treating physician rule, thus precluding any finding of harmless error.

Defendant attempts to rescue the ALJ's decision by highlighting the reasons provided for according significant weight to Dr. Mathews' opinion, including a treating relationship with

---

[8] Spinal meningocele is defined as a "hernial protrusion of the meninges through a defect in the vertebral column (spina bifida), usually posteriorly, forming a fluid-filled sac[.]" *See* Elsevier Saunders *Dorland's Illustrated Medical Dictionary*, 1133 (32nd ed. 2012).

[9] Imaging studies additionally showed evidence of central stenosis at the L5-S1 level (Tr. 288), as well as persistent left foraminal narrowing following the initial laminectomy. (Tr. 284-85).

Plaintiff that purportedly lasted "for several years." (Tr. 17). It is true that Dr. Mathews performed one of the two lumbar laminectomies that Plaintiff underwent in the span of less than a year (Tr. 601-05), yet their first documented encounter did not take place until October 12, 2015. (Tr. 610).[10] Plaintiff saw Dr. Mathews on one other occasion in August of 2016 (Tr. 795), while his remaining two office visits with Dr. Mathews' practice group involved a nurse practitioner. (Tr. 523, 800). It is therefore clearly inconsistent for the ALJ to champion Dr. Mathews' "familiar[ity] with the claimant's symptoms" (Tr. 17) without acknowledging the much more extensive treatment provided by Dr. Isaac, who saw Plaintiff no less than 10 times between November of 2014 and August of 2016 (*see* Tr. 678-708, 759, 762, 797), a factor that tends to support Dr. Isaac's conclusions. *See* 20 C.F.R. 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Such selective emphasis on the care provided by each treating physician is antipodal to the ALJ's duty to "consider the evidence taken as a whole." *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984).

Defendant proffers additional arguments in defense of the ALJ's decision to elevate the Dr. Mathews' MSS over the opinion provided by Dr. Isaac, including the alleged supportability of Dr. Mathews' conclusions and the perceived internal inconsistency of Dr. Isaac's MSS. DE 17 at 8.[11] Regardless of whether such positions have merit, however, it was the responsibility of the ALJ to provide such analysis at the administrative level. *See Leppien v. Comm'r of Soc. Sec.*, No. 1:15-cv-722, 2016 WL 3661851, at *4 (W.D. Mich. July 11, 2016) ("The Commissioner's

---

[10] Plaintiff was seen by a nurse practitioner working with Dr. Mathews on August 31, 2015. (Tr. 523-24). The electronic signature of Dr. Mathews appears at the bottom of this document. (Tr. 523).

[11] Defendant shrewdly notes that Dr. Isaac's opinion that Plaintiff would be required to walk every 10 minutes appears to conflict with his opinion that Plaintiff would be able to sit or stand for up to 30 minutes. (*See* Tr. 736).

attempt to rehabilitate the ALJ's reasoning ... is precisely the type of analysis the ALJ should have undertaken in the first place."). Defendant is not permitted to now supplement the deficient analysis contained in the ALJ's opinion. *See Berryhill v. Shalala*, 4 F.3d 993 (table), 1993 WL 361792, at *6 (6th Cir. 1993) ("[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)).

The Court also notes that despite according significant weight to Dr. Mathews' opinion that Plaintiff could perform a range of medium work,[12] the ALJ modeled the RFC almost entirely on the light work restrictions recommended by a non-examining State agency physician. (*See* Tr. 15, 87-88).[13] Furthermore, Dr. Mathews limited Plaintiff to walking no more than two hours at a time, a finding that is not included in the RFC, and recommended manipulative and postural limitations that differ from those ultimately adopted by the ALJ. (*See* Tr. 812-14). Such departures from Dr. Mathews' opinion further demonstrate that the ALJ failed to adequately explain the basis for his decision. *See Ledford v. Colvin*, No. 15-217, 2016 WL 4045427, at *5 (E.D. Ky. June 21, 2016), *report and recommendation adopted*, No. 2015217, 2016 WL 4046993 (E.D. Ky. July 27, 2016) ("[T]he ALJ must meaningfully explain why certain

---

[12] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Defendant concedes that Dr. Mathews' opinion implies that Plaintiff can perform a range of medium work. *See* DE 17 at 9.

[13] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

limitations are not included in the RFC determination-especially when such limitations are set forth in opinions the ALJ weighs favorably.") (internal citation omitted).[14]

It is well-established that the exclusive duty of weighing conflicting evidence lies with the ALJ, and not this Court. *Harris v. Heckler*, 756 F.2d 431, 439 (6th Cir. 1985). Equally crucial is the ALJ's duty to explain with sufficient specificity the reasons that justify the weight he has accorded to a treating physician's opinion, *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012), which exists "so plaintiffs are able to understand how their case was decided and to ensure the ALJ applied the treating physician rule." *Peacock v. Astrue*, No. 2:05-cv-0076, 2009 WL 3615011, at *15 (M.D. Tenn. Nov. 2, 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004)). The Sixth Circuit has made clear that failure to fulfill this duty justifies reversal of an ALJ's determination that a claimant is not disabled. *See Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009) ("[W]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (internal citation omitted). Because of the ALJ's failure in this regard, the Court rejects Defendant's belated effort to salvage the ALJ's opinion and finds that remand is necessary for further consideration.

2. **Credibility.**

Plaintiff next argues that the ALJ erred by determining that Plaintiff's allegations regarding the severity of his symptoms were not entirely credible. Notably, the Sixth Circuit has

---

[14] The Court also notes that Dr. Mathews' MSS is less than impeccable, as it provides extremely minimal support for any of the opinions contained therein despite repeated prompts for "medical or clinical findings ... which support your assessment[.]" (Tr. 811-16).

held that an ALJ's credibility finding is entitled to significant deference "because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). The ALJ is permitted to "dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict." *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990). However, if the ALJ concludes that a claimant's allegations are not credible, "he must clearly state his reason for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (citing *Auer v. Sec'y of Health & Human Servs.,* 830 F.2d 594, 595 (6th Cir. 1987)).

The Court first notes that despite Plaintiff's heavy reliance on Social Security Ruling ("SSR") 96-7p, which describes scenarios in which the ALJ is required to make a determination regarding a claimant's credibility, this ruling was rescinded and replaced more than 10 months before the ALJ's decision was entered. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p became applicable shortly thereafter. *See* 2016 WL 1237954, at *1 (March 24, 2016) ("This SSR is effective on March 28, 2016."). Nevertheless, the requirements of SSR 16-3p are nearly identical to those contained in SSR 96-7p with respect to the ALJ's analysis of a claimant's alleged symptoms:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

13

SSR 16-3p, 2016 WL 1119029, at *9 (March 16, 2016). A related regulation concerning the ALJ's evaluation of a claimant's symptoms mandates that, once it has been determined that Plaintiff suffers from an underlying medically determinable physical impairment, as is the case here (Tr. 13), the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms" to decide whether such symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). The ALJ's conclusions in this regard may not be disturbed without a "compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Plaintiff focuses primarily on the ALJ's evaluation of his physical symptoms, which included an ultimate determination that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 18). In making this finding, the ALJ relied on Plaintiff's ability to provide care for his young daughter, carry out light household chores, and occasionally shop in stores. (Tr. 18). The Court notes, however, that Plaintiff has consistently maintained that his ability to care for his daughter has been severely impacted by his symptoms (Tr. 36-37, 252), that his chores consist of little more than "wash[ing] a few simple dishes" due to his inability to stand at a sink for any significant amount of time (Tr. 36, 253), and that his wife does the majority of the shopping for his family due to the pain caused by standing and walking. (Tr. 254). Moreover, the Sixth Circuit has held that "minimal daily functions" such as cleaning and providing care "are not comparable to typical work activities." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

However, the Court finds that the ALJ provided sufficient discussion of Plaintiff's allegations regarding the severity of his mental impairments and their inconsistency with the record to satisfy his burden under SSR 16-3p. (*See* Tr. 14-15). Plaintiff does little more than cite his own testimony that bipolar disorder causes emotional "switch[ing] and swing[ing]" (DE 16 at

14

16), a claim that does little to overcome the significantly deferential standard applicable to the Court's review. *See Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) ("[A]n administrative law judge's credibility findings are virtually unchallengeable.") (quoting *Payne v. Comm'r of Soc. Sec.,* 402 F. App'x 109, 112-13 (6th Cir. 2010)). The Court therefore rejects this assertion of error.

### 3. RFC.

Plaintiff's final assertion of error includes a general claim that the ALJ failed to appropriately evaluate his RFC. DE 16 at 18. Plaintiff argues that the ALJ improperly disregarded the "credible opinions" contained in Dr. Isaac's MSS when questioning the vocational expert ("VE") regarding Plaintiff's ability to work (*id*. at 19), yet the ALJ unequivocally rejected Dr. Isaac's findings. (*See* Tr. 17). It is axiomatic that an ALJ is required to incorporate only those functional limitations he deems credible into hypothetical questions posed to a VE regarding a Plaintiff's capacity for full-time employment. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Having determined that Dr. Isaac's opinions were due "little weight" (Tr. 17), the ALJ was under no obligation to include the functional limitations recommended by Dr. Isaac in the hypothetical questions posed to the VE.

Nevertheless, the Court finds that remand is necessary based on the ALJ's failure to elicit testimony from the VE that supports his RFC determination. The regulations permit an ALJ to utilize a VE to determine whether a claimant, in light of his RFC, can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c). Testimony elicited from a VE indicating that a claimant can perform other work constitutes substantial evidence in support of an ALJ's finding that the individual is not disabled if the testimony is

given in response to a hypothetical question that "accurately sets forth the plaintiff's physical and mental impairments." *Smith*, 307 F.3d at 378 (internal citation omitted).

The ALJ stated in the administrative opinion that the VE confirmed that Plaintiff could perform several different jobs in the national economy in light of the assigned RFC (Tr. 19), yet the RFC is not based on an accurate rendering of the VE's testimony. During the administrative hearing, the ALJ posed a hypothetical to the VE based on a State agency physician's opinions concerning Plaintiff's physical limitations. (*See* Tr. 40, 87-89).[15] In response to the ALJ's question as to whether there would be jobs available based on such limitations, the VE answered affirmatively but stipulated that Plaintiff would have to retain the "ability to alternate [between] standing and sitting." (Tr. 40). No such condition was included the RFC ultimately formulated by the ALJ, which is significant given that the ALJ also failed to include any limitations concerning the amount of time Plaintiff would be able to sit, stand, or walk at a time. *Cf. Wyczlinski v. Astrue*, No. 3:09-cv-481, 2011 WL 798135, at *8 (S.D. Ohio Mar. 1, 2011) (noting that an ALJ's restriction to sitting for two hours at a time and standing for 30 minutes at a time necessarily implied "some sit/stand option"). The VE's testimony regarding the jobs that Plaintiff could perform therefore fails to comport with the RFC, which prevents the ALJ's step-five finding from enjoying the support of substantial evidence and necessitates remand. *See Lamorgese v. Comm'r of Soc. Sec.*, No. 1:14-cv-1104, 2015 WL 3894282, at *6 (N.D. Ohio June 24, 2015) (noting that the "failure by the ALJ to clarify how [the claimant's] limitations as set out in the RFC were actually accommodated by the jobs identified ... makes judicial review of the ultimate decision virtually impossible").

---

[15] As previously discussed, this physician opined that Plaintiff could perform the exertional requirements that comprise "light work." 20 C.F.R. § 404.1567(b).

## III. CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 18) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for a new administrative hearing and determination consistent with this opinion.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:
*J. Gregory Wehrman*
**United States Magistrate Judge**